UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CT-3186-BO

| | |
|---|---|
| WILLIAM S. WALKER, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| DELIA DURHAM, et al., ) | |
|     Defendants. ) | |

On September 24, 2012, William S. Walker ("Walker"), a state inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983.[1] Walker names two defendants: Delia Durham ("Durham"), a staff counselor in the Alcohol and Chemical Dependancy Program ("ACDP") at Wayne Correctional Institution ("Wayne Correctional"), and Francis Marczyk ("Marczyk"), the ACDP Program Director at Wayne Correctional.[2] Specifically, Walker claims violation of his right to be free from cruel and unusual punishment, sexual abuse, unwanted touching, and for violations of his right to privacy and bodily integrity against defendant Durham. Walker claims deliberate indifference to the sexual abuse and harassment suffered, and for facilitating the violation of his right to be free from cruel and unusual punishment, sexual abuse, unwanted touching, and for violations of his rights to privacy and bodily integrity against defendant Marczyk. Before the court at this time are motions for summary judgment filed by defendant Durham [D.E. 34] and defendant Marczyk [D.E. 39], a motion to strike filed by plaintiff [D.E.

---

[1] Walker is represented by Elizabeth Albiston and Michele R. Luecking-Sunman of North Carolina Prisoner Legal Services, Inc.

[2] In the complaint, three defendants, Delia Durham, Francis Marczyk, and Henry Parks, were named. Marczyk and Parks were both named as supervisors of Durham's. All three defendants retained separate counsel. Notice of Appearance [D.E. 10, 12, 13, 16]. On April 23, 2014, Parks was voluntarily dismissed from the action. Order [D.E. 60].

45], and a motion to strike filed by defendant Marczyk [D.E. 51]. All motions are properly before the court, and ripe for determination.

I. Factual Background and Procedural History[3]

In 1997, when Walker was 17 years old he was arrested and was taken to the Stokes County Jail, and he has been in jail or prison since that time. Compl. [D.E.1] ¶¶ 1, 15; Aff. Walker ¶¶ 2, 3 [D.E. 49]. He was admitted to a North Carolina prison facility when he was 18 years old. Aff. Walker ¶ 3. In 2000, Walker completed alcohol and drug treatment at Foothills Correctional where staff asked Walker to consider becoming a Peer Counselor (or Treatment Assistant) given his interaction with others during the treatment programs. Id. ¶ 4. Walker agreed and was invited to train as a Peer Counselor in the Alcohol and Chemical Dependency Program (ACDP) at Wayne Correctional. Id. Peer Counselors are prisoners who counsel other prisoners with alcohol and drug dependencies. Id. Peer Counselors meet with ACDP program participants daily to give them advice and serve as role models. Id. Each Peer Counselor is supervised by a Staff Counselor. Id. Walker was the youngest Peer Counselor at that time at an adult facility. Id.

Being a Peer Counselor was important to Walker. Id. ¶ 5. Prior to becoming a Peer Counselor, Walker had never experienced the trust that was given to him by the men that he worked with and the staff that supervised him. Id.

Defendant Durham acted as Walker's Staff Counselor from 2005 to 2010. Id. ¶ 6. Beginning in September 2008, Durham repeatedly chose Walker as her Peer Counselor

---

[3]The facts are set out as articulated and alleged by Walker. Durham "denied the allegations." Mem. in Supp. Summ. J. [D.E. 35] p. 1. Marczyk states that he "never suspected misconduct between Defendant Durham and Plaintiff." Aff. Marczyk [.D.E. 42] ¶ 16.

instead of following the standard peer rotation. Id. ¶ 8. She requested Walker specifically for jobs, brought him gifts of food and personal cards, and touched him excessively on the arm and back. Id. Durham would routinely come to Walker's housing block at Wayne Correctional and request him for minor jobs that she normally did herself before Walker met her. Id. At the end of the day, Durham would give Walker her purse, a book or something to carry so he could walk out with her to the front door at Wayne Correctional. Id.

In the summer of 2009, it is alleged that Durham began sexually abusing Walker. Id. ¶ 9. At the time the abuse began, Durham was approximately 61 years old and Plaintiff was 29 years old. Id. ¶ 13. The abuse included intercourse, oral sex, kissing, and masturbation. Id. ¶ 9. Walker has never been in an adult relationship prior to this situation. Id. ¶ 10. Initially, he enjoyed the praise and attention Durham gave him because he had never experienced anything like this before. Id. But as the abuse continued, Walker began to feel a conflict and resentment as well as guilt, shame, and fear. Id. Walker feared retaliation by Durham. Id. ¶¶ 10-12. For example, Durham told Walker she had stabbed an inmate in a previous drug and alcohol rehabilitation program at DART Cherry, carried a pistol, and that the superintendent would believe anything she said given he was her neighbor. Id. ¶ 11.

Durham sexually abused Walker almost daily from the summer of 2009 until March 2010, and from June 2010 until October 2010. Id. ¶ 12. Durham told Walker that she loved him, that she had a lot of money, and that she was going to get him out of prison. Id. ¶ 13.

By February, Marczyk, the ACDP Program Director for Wayne, was observing that Walker was frequently in Durham's office. Aff. Marczyk ¶ 17. He also suspected Durham might be requesting Walker to work for her even though Walker was not then her assigned treatment

3

assistant. Id. ¶ 18. Marczyk spoke with Parks who was Durham's direct supervisor and William Henry and Joe Mason regarding his observations. Id. ¶ 17. Marczyk also spoke to Walker and Durham about his observations. Id.

As for Walker's affidavit regarding Marczyk, he states the following:

> During March of 2010, Defendant Marczyk took me into his office for the fourth or fifth time, along with William "Bill" Hemy, another ACDP staff member. In that conversation he expressed that Defendant Parks had reported Durham's abuse to him. Marczyk told me that I was spending too much time with Durham and that I needed to get away from her. Marczyk had warned me several times earlier that the staff had been reporting to him that about the appearance of me and Durham spending so much time alone concerned them. This was the first time Marczyk had another staff member in his office when he was warning me to stay away from Durham. I asked Marczyk what should I do when a staff member requests for me to do something and how could I tell a staff member no so I could avoid a disciplinary write up as well as being fired from my job as a Peer Counselor and being transferred. During this meeting with Marcyk and Mr. Henry, Durham came into the office and stated she needed to see me when I was done. After Durham left the office I looked at Marcyzk for guidance on how I should handle this request. Marczyk just shrugged his shoulders.

Aff. Walker ¶ 14. Walker requested a transfer to another prison, but Durham remained employed as a Staff Counselor at Wayne Correctional. Id.

Marczyk arranged to have Walker transferred to Pender Correctional, where Walker believed he was supposed to stay for six months.[4] Id. ¶ 15. However, Walker was returned to Wayne Correctional at defendant Marczyk's request, in approximately June of 2010, three months earlier than scheduled. Id. Parks did assign Walker to a different Staff Counselor, Ms.

---

[4] Marczyk states that he arranged for Walker to be transferred to Pender because Pender needed Peer Counselors or Treatment Assistants such as Walker. Aff. Marczyk [D.E. 42] ¶ 20. He also stated that Walker wanted to be at Pender to be housed closer to a female Marine Sergeant from Camp Lejuene and the visitation policy at Pender would make family visitation easier. Id.

4

Hooks. Id. Regardless, Durham continued to have access to Walker and allegedly resumed having regular sexual intercourse with him. Id.

The signs ("red flags") of Durham's sexual abuse should have been obvious to prison officials including defendant Marczyk. Id. ¶ 16. For example, Durham singled him out for tasks that were assigned to other inmates. Id. Durham frequently called him into her counseling group even though he was not assigned to work with her. Id. On several occasions, Durham returned to work after her usual hours for the purpose of seeing Walker. Id. Likewise, it is alleged that on numerous occasions Parks had Walker leave Durham's group because he was not supposed to be there. Id. ¶ 17. If Parks was not working on site, he would call in and have another staff member remove Walker from whatever activity he was engaging in with Durham. Id. ¶¶ 16, 17.

Walker feared reporting Durham's abuse because he did not want to be put in segregation, nor did he want to be transferred farther away from home while his father was ill. Id. ¶ 18. Walker was afraid Durham would allege Walker raped her. Id. He felt no one would believe his version of the events, given the inequities in their status, staff member compared to inmate. Id.

In October of 2010, Wayne Correctional Assistant Superintendent Kevin Barnes initiated an internal investigation into the relationship between Durham and Walker. Id. ¶ 19; Aff. of Ex. [D.E. 41] Ex. D. This investigation was based on information from Parks. Aff. Barnes [D.E. 44] ¶ 10. The investigation included a search of Walker's locker which revealed photographs of Durham. Id. ¶ 12. After the investigation, Durham was issued a written warning for her involvement in an unduly familiar relationship that crossed professional boundaries with Walker. Aff. of Ex. [D.E. 41] Ex. B. Subsequently, on June 12, 2011, Walker submitted a confidential

5

Case 5:12-ct-03186-BO   Document 61   Filed 09/23/14   Page 5 of 18

grievance alleging sexual abuse and a PREA investigation was initiated. Aff. of Ex. [D.E. 41] Ex. D. Effective April 17, 2012, NCDPS terminated Durham's employment for unacceptable personal conduct.[5] Id. Ex. D. Marczyk received a written warning for his failure to report in early 2010 the concerns regarding undue familiarity between Durham and Walker. Id. Ex. E. Further, the warning noted that while Marczyk transferred Walker to another facility, he "initiated the transfer of the same inmate back . . . thus creating an environment in which the previous questionable behaviors might resume." Id.

Walker contends that as a result of the alleged abuse, he began to have nightmares and started grinding his teeth at night, chipping his front tooth. Id. Walker also contends that he initially denied Durham's sexual abuse because of his fear staff would not believe him, he would lose his job, he would be sent to segregation, and he would be unable to visit with his family during his father's illness. Id. ¶ 21. Walker decided to fully report the abuse he had suffered on June 12, 2011, after a period of separation from the abuse. Id. ¶ 21- 22.

II. Discussion

    a.    Motions to Strike

        i.    Walker

Walker seeks to strike defendant Marczyk's motion for summary judgment. Mot. to Strike [D.E. 45]. The motion to strike is based on defendant's untimely filing of his motion for summary judgment by approximately one day. Federal Rule of Civil Procedure 6(b) guides

---

[5] The investigation included the administration of a polygraph test. Id. The polygraph evaluation indicated that Walker was not deceptive when indicating "he had engaged in a sexual relationship." Id. Durham refused to take the polygraph test and was aware that this would be considered failure to cooperate with an internal investigation. Id.

courts on extensions of time for motion papers. Fed. R. Civ. P. 6(b). Prior to passage of a deadline, "the court may, for good cause, extend the time with or without motion or notice . . . before the original time or its extension expires." Fed. R. Civ. P. 6(b)(1)(A). However, "on motion made after the time has expired," the court may only extend the time "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "Excusable neglect" applies to those "instances of mere 'inadvertence, mistake, or carelessness.'" Symbionics Inc. v. Ortlieb, 432 Fed. App'x. 216, 220 (4th Cir. 2011) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship, 507 U.S. 380, 391–92 (1993)). Relevant circumstances for determining excusable neglect are the danger of prejudice, length of delay and potential impact, the reason for the delay, whether the delay was within the reasonable control of the movant, and whether the movant acted in good faith. Thompson v. E.I. DuPont de Nemours & Co., Inc., 76 F.3d 530, 533 (4th Cir. 1996) (quoting Pioneer, 507 U.S. at 395). The most important of these factors is the reason for failure to timely file. Thompson, 76 F.3d at 534.

Defendant Marchzyk's counsel explains that the deadline was erroneously calendared as due on November 20, 2013, instead of November 19, 2013. Resp. [D.E. 46] p. 1-2. The motion was also filed within 48 hours of the deadline after incurring technical issues with the filing of the supporting exhibits. Id. Counsel asserts the delay was not done in bad faith but inadvertence. Id. The court finds that no prejudice could flow from this short delay, the delay was inadvertent and certainly there is no showing of bad faith. The filing was delayed due to excusable neglect, and the motion to strike is DENIED.

7

ii.  Marczyk

Defendant Marczyk seeks to strike Walker's entire affidavit or certain statements contained therein based on the inadmissability of those statements as hearsay. Mot. to Strike [D.E. 51]. Specifically, defendant seeks to strike paragraphs 14-17 of Walker's affidavit. Mem. in Supp. [D.E. 52] p. 3-5. In paragraph 14, the contested statement is Walker's allegation that during March of 2010, defendant Marczyk took him into his office for the fourth or fifth time, along with William Henry, another ACDP member, and expressed that Parks had reported Durham's abuse. Id. In paragraph 15, the contested statement is that Walker believed he was supposed to be transferred to Pender Correctional for six months, but was returned to Wayne Correctional three months early at Marczyk's request. Id. In Paragraph 16, the contested statement is that signs of Durham's sexual abuse were obvious to defendants Parks and Marczyk. Id. Further, the statement that "the repeated conversations in 2009 and 2010 that Marczyk had with me, and with me and Durham, regarding Parks' allegation, made it clear that he had not only been told by Parks but by other staff counselors that they suspected Durham was sexually abusing me" is contested. Id. In Paragraph 17, the statement at issue is "[i]f Parks was not working on site, he would call in and have another staff member remove me from whatever activity I was engaging in with Durham." Id.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801; United States v. Moss, 445 Fed. App'x 632, 634 (4th Cir. 2011). Hearsay is generally inadmissable. Fed. R. Evid. 802. However, a statement offered against a party is not hearsay if it is a party's own statement. Fed. R. Evid. 801(d)(2); Moss, 445 Fed. App'x at 634. In order to

8

determine whether an out-of-court statement qualifies as inadmissible hearsay under this Rule, the district court must "identify [ ] the actual purpose for which a party is introducing" the statement at issue. United States v. Gonzales–Flores, 701 F.3d 112, 117 (4th Cir. 2012). A statement is not hearsay if it is offered for some purpose other than to prove the truth of the assertion contained within the statement. See United States v. Pratt, 239 F.3d 640, 644 (4th Cir. 2001).

The court denies the motion to strike portions of, or the entirety of, Walker's affidavit. The court finds that these statements do not appear to be hearsay given they are either party-opponent statements, statements not offered to prove the truth of the matter asserted, or based on personal knowledge of Walker.

    b.    Motions for Summary Judgment

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the

9

evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

        i.     Durham's Motion for Summary Judgment

Defendant Durham's six page motion for summary judgment raises one defense, that the Prison Litigation Reform Act (PLRA), specifically 42 U.S.C. § 1997e(e), requires a prior showing of physical injury where a prisoner brings an action for mental or emotional injury and that the complaint fails to satisfy this requirement. Mem. in Supp. [D.E. 35] at 2. Defendant asserts that "[t]he Plaintiff makes conclusory allegations that [she] violated his rights to be free from cruel and unusual punishment, sexual abuse, unwanted touching, and for violations to his rights of privacy and bodily integrity." Id. Durham continues by asserting the following:

> In his deposition, however, Mr. Walker tells a different story. He first described in great detail his premeditated murder of both his grandparents and how he then took money from the dead body of his grandfather. He then testified about his alleged damages arising from his alleged mistreatment at the Wayne Correctional Center which he says affected his "standing in my community." His reputation all over the State went "absolutely out of the window." He further stated that he (apparently as a result of the incident) grinds his teeth at night. These alleged "injuries" are insufficient as a matter of law to overcome the requirement of prior physical injury as set out in 42 U.S.C. § 1997e(e).
>
> True, sexual assault has been held to constitute a physical injury under the PLRA. See, e.g., Kahle v. Leonard, 563 F 3d 736 (8th Cir. 2009). However, here there was no assault of any kind. According to the Plaintiff, he had a mutual relationship with the Defendant Durham. Some of the incidents were instigated by the Plaintiff, some by the Defendant Durham. As there was no assault, the Plaintiff can take no benefit from the holding of the Kahle line of cases. Instead, he must meet the PLRA test of physical injury, which he has not done.

Id. at 3-4.

10

While not controlling of the constitutional issue before the court today, it is prudent to begin with the understanding that under North Carolina law prisoners are deemed incapable of consenting to sexual activity with prison correctional staff, and the conduct constitutes a Class E Felony. See N.C. Gen. Stat. § 14–27.7(a); Etters v. Bennett, No. 5:09-CT-3187-D, 2011WL 976472 at *2 (E.D.N.C. Mar. 16, 2011).

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). Whether a specific act constitutes cruel and unusual punishment is measured by "the evolving standards of decency that mark the progress of a maturing society." Hudson v. McMillian, 503 U.S. 1, 8 (1992). The Eighth Amendment protects "the basic concept of human dignity" and forbids conduct that is "so totally without penological justification that it results in the gratuitous infliction of suffering." Gregg v. Georgia, 428 U.S. 153, 182–83 (1976).

Sexual harassment or assault of an inmate by a correctional officer violates the Eighth Amendment. See, e.g., Wood v. Beauclair, 692 F.3d 1041, 1045-46 (9th Cir. 2013); Kahle v. Leonard, 477 F.3d 544, 553 (8th Cir. 2007); Smith v. Cochran, 339 F.3d 1205, 1212–13 (10th Cir. 2003); Schwenk v. Hartford, 204 F.3d 1187, 1196-97 (9th Cir. 2000); Daskalea v District of Columbia, 227 F.3d 433, 440–41 (D.C. Cir. 2000); Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998); Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998); Boddie v. Schnieder, 105 F.3d 857, 860–61 (2d Cir. 1997); Seltzer-Bey v. Delo, 66 F.3d 961, 962-63 (8th Cir. 1995); Watson v. Jones, 980 F.2d 1165, 1165-66 (8th Cir. 1992); Women Prisoners of the Dist. of

11

Columbia Dep't of Corr. v. District of Columbia, 877 F. Supp. 634, 665 (D.D.C. 1994); Hovater v. Robinson, 1 F.3d 1063, 1068 (10th Cir. 1993). Such behavior has no legitimate penological purpose, and is "simply not part of the penalty that criminal offenders pay for their offenses against society." Bodie, 105 F.3d at 860-61 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994); Schwenk, 204 F.3d at 1196 (Sexual assault on a prisoner by a prison guard is always "deeply 'offensive to human dignity'" and is completely void of penological justification.).

Defendant Durham argues that absent physical injury from the allegations, the PLRA precludes any claim based on mental or emotional injury. The PLRA provides in relevant part that:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). However, courts considering the question have found that sexual assaults can constitute a "physical injury" under the PLRA. Carrington v. Easley, No. 5:08-CT-175-FL, 2011 WL 2132850, at *3 (E.D.N.C. May 25, 2011) (holding on default judgment in case where plaintiff alleged a guard ordered him to undergo strip search and unsuccessfully attempted to fellate him that "a sexual assault qualifies as a 'physical injury' under the PLRA. . . . Even absent a physical injury, sexual assault is an injury of 'constitutional dimensions' as to which the PLRA does not bar recovery"); see also Williams v. Prudden, 67 Fed. App'x 976, 977-78 (8th Cir. 2003) ("allegations that officer forcibly ground his pelvis against inmate, grabbed her breast, verbally demanded sexual favors, made physical sexual advances, and attempted to force himself upon her, and that she suffered resulting emotional and bodily harm, sufficiently stated an Eighth Amendment claim); Liner v. Goord, 196 F.3d 132, 135 (2d Cir. 1999) (while there is no

12

"statutory definition of 'physical injury' " [in the PLRA,] the "the alleged sexual assaults qualify as physical injuries as a matter of common sense. Certainly, the alleged sexual assaults would constitute more than de minimis injury if they occurred."); Marrie v. Nickels, 70 F. Supp.2d 1252, 1257, 1264 (D. Kan.1999) (holding in case where guard was alleged to have stroked the buttocks and genitalia of inmates during frisk search that such "sexual assaults would qualify as physical injuries under § 1997e(e)").

Here, defendant Durham acted as Walker's Staff Counselor from 2005 to 2010. After several years in this position of authority, beginning in the summer of 2009, it is alleged that Durham began sexually abusing Walker. Durham was approximately 61 years old and Walker was 29. Walker had been incarcerated since he was 17, and he had never been in an adult relationship. The abuse included intercourse, oral sex, kissing, and masturbation. Walker was enormously confused and felt guilt, shame, and fear. He also feared retaliation by Durham. The behavior occurred almost daily from the summer of 2009 until March 2010, and from June 2010 until October 2010. Walker feared reporting Durham's abuse because he did not want to be put in segregation, nor did he want to be transferred farther away from his father who was ill and often came to visit. Walker was also afraid Durham would allege Walker raped her. He was afraid no one would believe his version of the events, given the inequities in their status as a staff member and an inmate. It is alleged that others were aware of the abuse, yet there was no reprisal of Durham for years.

Eventually, Walker was questioned and reprimanded, and although he was transferred to another prison at his own request, he was returned within three months and the abuse continued. After months of abuse, in October of 2010, an investigation of the ongoing behavior was initiated

13

wherein Walker lost his job as a Peer Counselor and he was transferred further away from home to Tabor Correctional. Walker began to have nightmares and started grinding his teeth at night, chipping his front tooth. The court finds that the allegations of sexual abuse (if proven) violate the Eighth Amendment and satisfy § 1997e(e). See e.g. Kemner v. Hemphill, 199 F. Supp.2d 1264, 1269 (N.D. Fla. 2002). Thus, the court denied Durham's motion for summary judgment.

    ii.    Marczyk's Motion for Summary Judgment

Marczyk makes two arguments in his motion for summary judgment. First, that "[Walker] cannot show his exposure to Durham constituted a 'substantial risk of serious harm' when he was aware both that the conduct Durham was encouraging was expressly forbidden by NCDPS and that he himself had the ability to report such behavior and thereby stop it." Mem. in Supp. Summ. J. [D.E. 40] p. 10. Second, that Walker cannot show that Marczyk was deliberately indifferent to his health and possessed a sufficiently culpable state of mind thereby failing to show any supervisory liability as well as being shielded by qualified immunity. Id.

    a.    Substantial Risk of Serious Harm

The court has thoroughly addressed the question of whether the conduct at issue here, if proven, would violate the Eighth Amendment. Sexual harassment or assault of an inmate by a correctional officer violates the Eighth Amendment. See, e.g., Wood, 692 F.3d at 1045-46; Kahle, 477 F.3d at 553; Smith, 339 F.3d at 1212–13; Schwenk, 204 F.3d at 1196-97; Daskalea, 227 F.3d at 440–41; Berryhill, 137 F.3d at 1076; Barney, 143 F.3d at 1310; Boddie, 105 F.3d at 860–61; Seltzer-Bey, 66 F.3d at 962-63; Watson, 980 F.2d at 1165-66; Women Prisoners of the Dist. of Columbia Dep't of Corr., 877 F. Supp. at 665; Hovater, 1 F.3d at 1068. Likewise, under North Carolina law prisoners are deemed incapable of consenting to sexual activity with prison

14

correctional staff, and the conduct constitutes a Class E Felony. See N.C. Gen.Stat. § 14–27.7(a); Etters, 2011WL 976472 at*2. Marczyk's first argument for summary judgment fails.

    a.    Supervisory Liability

Supervisory liability under § 1983 is dependent upon a showing that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

Actual or constructive knowledge is shown by: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Id. A pervasive and unreasonable risk of harm is established by evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. Id.

Here, Marczyk was the ACDP Program Director at Wayne and Durham's supervisor. The allegations state that Marczyk himself observed what he considered concerning behavior between Durham and Walker. Despite of his own concern, he did not investigate further into the situation, but had other staff monitor the two. Marczyk did not document any of his concerns. Likewise, he did not inform his District Manager. Furthermore, when Walker asked for advice on how to handle the situation, Marczyk offered none. In fact, it was Walker who asked for the

15

transfer to another facility. According to the reprimand letter, Marczyk is stated to have transferred Walker in part due to his concern over the relationship. Regardless of the nature of the relationship that Marczyk believed existed between the two, he was in a position of authority, and yet did nothing to further investigate or put an end to the relationship. Likewise, Marczyk also had Walker return to the facility where Durham remained employed "thus creating an environment in which the previous questionable behaviors might resume." Aff. of Ex. [D.E. 41] Ex. D. Finally, Marczyk was well aware that the Department of Public Safety has adopted a policy of zero-tolerance standard for sexual abuse and harassment of prisoners, and was receiving such training regarding this standard and the Prison Rape Elimination Act while addressing the undue familiarity concerns of Walker and Durham. Thus, on this record, the court finds that genuine issues of material fact preclude summary judgment. Walker has presented evidence that Marczyk actually knew of and ignored Durham's conduct.

        b.    Qualified Immunity

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012); Brandon v. Holt, 469 U.S. 464, 472–73 (1985). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Reichle, 132 S. Ct. at 2093; Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012); Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011); Pearson v. Callahan, 555 U.S. 223, 231–32 (2009).

16

The court must ask two questions to determine whether qualified immunity applies. See, e.g., Reichle, 132 S. Ct. at 2093; Pearson, 555 U.S. at 232; Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010); Unus v. Kane, 565 F.3d 103, 123 n.24 (4th Cir. 2009); Miller v. Prince George's Cnty., 475 F.3d 621, 626–27 (4th Cir. 2007). Courts have discretion about which question to address first. Pearson, 555 U.S. at 236. The court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." Id. at 232. The court also must determine "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. (quotation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." al-Kidd, 131 S. Ct. at 2083 (quotations omitted) (alterations in original). The United States Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Id.; see Reichle, 132 S. Ct. at 2093. Thus, defendants are entitled to qualified immunity grounds if the answer to either question is "no." See, e.g., Reichle, 132 S. Ct. at 2093; al-Kidd, 131 S. Ct. at 2080; Miller, 475 F.3d at 627; Bostic v. Rodriguez, 667 F. Supp. 2d 591, 606 (E.D.N.C. 2009). Here, given the survival of the claims and the indication that Marczyk knew of and ignored Durham's conduct, the record precludes a determination of qualified immunity at this time.

III. Conclusion

Accordingly, the motions for summary judgment filed by defendant Durham [D.E. 34] and defendant Marczyk [D.E. 39] are DENIED. Likewise, the motion to strike filed by plaintiff

17

[D.E. 45] and a motion to strike filed by defendant Marczyk [D.E. 51] are both DENIED. The parties are further DIRECTED to provide the court with an outline (jointly or separately) of a proposed plan for bringing this long pending case to resolution within 14 days of the entry of this order.

SO ORDERED, this the 22 day of September 2014.

TERRENCE W. BOYLE
United States District Judge